In the Interest of A.J., C.J., and D.J., Minor Children,

V.J., Mother, Appellant,

F.J., Father, Appellant.

No. 95–2192.

Court of Appeals of Iowa.

July 26, 1996.

As Corrected Dec. 6, 1996.

Peter W. Hansen, Burlington, for appellant-mother.

Gary L. Putnam and Aaron R. Bixby of Hirsch, Adams, Krekel, Putnam, Cahill & Miller, Burlington, for appellant-father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller–Todd, Assistant Attorney General, for appellee-State.

Kara D. Junkins of Aspelmeier, Fisch, Power, Warner & Engberg, P.L.C., Burlington, guardian ad litem, for minor children.

Heard by SACKETT, C.J., and HUITINK and VOGEL, JJ.

VOGEL, Judge.

Virginia and Francis were married in 1982; however, they have been separated for several years. They are the parents of A.J., born May 3, 1984, C.J., born August 2, 1985, and D.J., born March 7, 1987. Virginia is also the mother of three other children. Her parental rights to the oldest of these three other children were terminated in 1979; the other two children are in foster care but are not subjects of this appeal.

A temporary removal order was issued in May 1991, removing the children from Virginia and placing the children with their grandmother. On July 16, 1991, A.J., C.J., and D.J. were adjudicated children in need of assistance (CINA) based on Virginia's inability to provide reasonable supervision. Since Virginia's whereabouts were unknown and Francis was incarcerated, the children were then placed with their paternal grandmother and her husband in Clayton County. In June 1992, the grandmother moved out of state and the girls were placed in foster care.

Following an August 1993 review and permanency hearing, the court placed the girls with Virginia in Burlington. To accommodate the placement with Virginia, the case was then transferred to Des Moines County. The children were removed from Virginia's custody and again placed in foster care in January 1994 upon a finding Virginia had denied critical care to the children. Virginia moved to Davenport.

In May 1995, the State filed a petition to terminate Virginia's and Francis's parental rights pursuant to sections 232.116(1)(d), (e), (f), (h), and (k) (1993). Hearings on the petition were held in July 1995. The court in its ruling of November 28, 1995 terminated Virginia's parental rights pursuant to Iowa Code sections 232.116(1)(d), (e), (f), and (k) (1995) and Francis's parental rights pursuant to Iowa Code sections 232.116(1)(d) and (e) (1995).

Virginia and Francis appeal.

**I. Scope of Review.** Our review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

While the district court terminated the parental rights on more than one statutory ground, we only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm the district court's ruling. *In re R.R.K.*, 544 N.W.2d 274, 276 (Iowa App. 1995).

**II. Significant and Meaningful Contacts.** Virginia and Francis both contend the district court erred in terminating their parental rights pursuant to Iowa Code section 232.116(1)(d) (1995). Section 232.116(1)(d) permits the juvenile court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, *"significant and meaningful contact"* includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Neither of the first two factors listed under section 232.116(1)(d) is disputed by either Virginia or Francis. Both parties, however, argue the third factor, concerning maintaining significant and meaningful contacts and making reasonable efforts to resume care, was not met.

■ *(A) Mother.* Prior to the termination hearings in July 1995, the children had been outside their mother's care for forty-nine out of the previous fifty-four months. In the twenty-three months prior to the termination hearings, Virginia had only visited the children eight times. Virginia visited the children only once in the six months prior to the termination hearings. Telephone contact between Virginia and the children was sporadic at best. Virginia has been inconsistent on acknowledging birthdays and did not contribute to the children's care during the time period between January 1994 and January 1995. We find Virginia failed to maintain significant and meaningful contact with the children.

■ Virginia has been unable to provide a stable living situation for herself or her children in the past. Records show she moved twenty-one times between April 1977 and January 1989. From the time Virginia moved to Burlington until January 1995, Virginia had ten known addresses. Virginia moved away from the children when she moved to Des Moines County. The children were moved to Des Moines County and Virginia was given an opportunity to care for the children. When it was decided she could not care for the children, she again moved away from the children by moving to Scott County. We find Virginia did not make reasonable efforts to resume care for the children.

We conclude the district court did not err in terminating Virginia's parental rights pursuant to section 232.116(1)(d).

■ *(B) Father.* Francis visited the children six times in the six months prior to the termination hearings. However, prior to this six-month period, Francis had very little contact with the children. A court report, written on July 2, 1993, stated, "Francis has maintained very sporadic contact with his girls." From August 1993 until March 1994, Francis had no contact with the children. Francis had a supervised visitation on March 28, 1994. From March 1994 until November 1994, there was no contact at all between Francis and the children. A report to the court stated telephone contact between Francis and the children was set up in November 1994; however, telephone contact has been sporadic due to Francis's telephone being disconnected and due to the children not wanting to make telephone calls. A social worker testified that while visitations in the six months prior to the termination hearings went well, she had serious concerns regarding Francis's past history of going for long spans of time without having any contact with the children.

As of January 1994, Francis owed approximately $13,564 in back child support. Between 1990 and the termination hearings, Francis had eight known residences. Some

of these different residences were due to incarceration. Francis has been incarcerated for a total of twenty-three months since 1990.

A parent's past performance may be indicative of the quality of care the parent is capable of providing in the future. *In re L.L.*, 459 N.W.2d 489, 493–94 (Iowa 1990). Our examination of Francis's performance is not limited to the six months prior to the termination hearings. We find the district court did not err in finding Francis's parental rights must be terminated pursuant to section 232.116(1)(d).

***III. Parents as Permanent Placements.***
Virginia and Francis both contend the district court erred in terminating their parental rights pursuant to Iowa Code section 232.116(1)(e) (1995). Section 232.116(1)(e) permits the juvenile court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

None of the first three factors listed under section 232.116(1)(e) is disputed by either Virginia or Francis. Both parties, however, argue the fourth factor, concerning whether there was clear and convincing evidence the children cannot be returned to the custody of their parents, was not met.

The legislature has statutorily determined the interval for which patience with parents may last. "This period must be reasonably limited because patience on behalf of the parent can quickly translate into intolerable hardship for the children." *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989). A child should not be forced to endlessly suffer the parentless limbo of foster care. *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990). He or she need not endlessly await the maturity of his or her natural parent. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). "Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d at 495.

In making a determination as to whether the children can be returned to the custody of the parents, we must look at the best interests of the children. *In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993).

The best interests are to be determined by looking at the child's long range as well as intermediate interests. The court is to consider what the future likely holds for the child if the child is returned to the parents. Insight for that determination is to be gained from evidence of the parents' past performance, for that performance may be indicative of the quality of future care the parents are capable of providing. Case history records are entitled to much probative force when a parent's record is being examined.

*Id.* (citations omitted).

Both Virginia and Francis have a very poor record in showing an interest in the children and showing an ability to parent the children. Virginia has had extended and repeated bouts with substance abuse and has failed to find any stability in maintaining a residence. Francis did not fully cooperate with DHS in its attempt to determine Francis's substance abuse status. Francis has also had some difficulty in maintaining a stable residence. Both parents have long criminal histories and periods of incarceration. As was previously discussed, neither parent maintained significant and meaningful contact with the children. Contact with the children has been inconsistent, sporadic, and, at times, nonexistent. Neither of the parents have shown they are capable of providing care for and meeting the special needs of these children who have considerable behavioral problems and learning disabilities. After considering the best interests of the children by examining the past performance of

the parents, we determine the district court did not err in terminating Virginia's and Francis's parental rights pursuant to section 232.116(1)(e).

**IV. Parental Rights with Respect to Another Child.** Virginia contends the district court erred in terminating her parental rights pursuant to Iowa Code section 232.116(1)(f) (1995). Section 232.116(1)(f) permits the juvenile court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family.

(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Virginia disputes whether the third and fourth factors under section 232.116(1)(f) were met.

Virginia has three children in addition to the three children at issue in this case. None of the six children have been in her care for any substantial period of time and all of Virginia's children have been adjudicated CINA. Virginia's parental rights to her oldest child were terminated in 1979. Since the CINA adjudications, Virginia has continued to have substance abuse problems, she was unable to provide proper care and supervision when the children were returned to her care, and she has not maintained significant and consistent contact with the children while they were in foster care. Virginia has a history of not participating in social services. She also has a long history of entering various substance abuse treatments. We find the district court did not err in terminating Virginia's parental rights pursuant to section 232.11(1)(f).

**V. Substance Abuse.** Virginia contends the district court erred in terminating her parental rights pursuant to Iowa Code section 232.116(1)(k) (1995). Section 232.116(1)(k) permits the juvenile court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.

(2) The parent has a severe, chronic substance abuse problem, and presents a danger to self or others as evidenced by prior acts.

(3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

Virginia disputes whether the second and third factors under section 232.116(1)(k) were met.

Section 232.116(1)(k) requires us to look at Virginia's prior acts to determine if there is a substance abuse problem and whether Virginia presents a danger to herself or others. If there is a substance abuse problem, then we must determine whether the prognosis indicates the children can be returned to Virginia's care within a reasonable time.

Virginia began drinking at age twelve and started using marijuana on a daily basis by age thirteen. Virginia has reported using cocaine, heroin, opiates, LSD, crystal, and prescription drugs in the past. Virginia also reported using alcohol and drugs during her pregnancies.

Virginia was treated for substance abuse in 1988 in the Quad Cities. She entered another program in 1991 and was then transferred to a six-month residential program in Burlington. When she completed this program in June 1992, a report stated she had reached maximum benefits. Virginia then began outpatient treatment. She re-entered the residential program for a few months at the end of 1992.

Virginia again entered treatment on February 2, 1994, due to alcohol abuse. She was discharged from treatment on February 23, 1994. Her prognosis at the time of discharge was guarded due to her lengthy history of substance abuse. Virginia did not fully participate in aftercare treatment following discharge. Virginia reported to social workers she was entering another treatment program in November 1994; however, this report was proven to be false in January 1995. A report received by social workers in August 1994 indicated a very poor prognosis for Virginia remaining sober.

In light of Virginia's extensive history of alcohol and substance abuse, we find she has a severe substance abuse problem which presents a danger to herself and to others. Given Virginia's lengthy history of repeated relapses and the repeated guarded prognosis for her sobriety, we find the children cannot be returned to her care within a reasonable time. We conclude the district court did not err in terminating Virginia's parental rights pursuant to section 232.116(1)(k).

*VI. Factors in Iowa Code sections 232.116(2), (3).* Virginia and Francis both contend the district court did not properly weigh the factors set out in Iowa Code sections 232.116(2), (3) (1995).

Francis argues the district court should have considered the factors set out in Iowa Code section 232.116(2). Section 232.116(2) states, "In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the physical, mental, and emotional condition and needs of the child." A court may consider whether the parent's ability to provide for the child is affected by the parent's mental capacity or by the parent's imprisonment for a felony. Iowa Code § 232.116(2)(a). Also, a court may consider the integration of the child in the foster home in view of: (1) "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child"; and (2) the preference of a child given the child's capacity to express such an opinion. Iowa Code §§ 232.116(2)(a), (b).

■ The factors enumerated in section 232.116(2) are not, standing alone, grounds for termination. *In re E.B.L.,* 501 N.W.2d 547, 552 (Iowa 1993). Rather, it requires the district court to consider "the physical, mental, and emotional condition and needs of the child" in making a determination on whether to terminate parental rights. Iowa Code § 232.116(2). The factors listed in this section are merely considerations.

■ The applicability of section 232.116(2)(a) as a consideration is only marginal. Francis has been imprisoned in the past for a felony. While this imprisonment certainly negatively impacted on his relationship with his children, he was not imprisoned at the time of the termination hearings. The considerations under section 232.116(2)(b) seem to have more applicability to this case. The length of time in a foster home does not appear to be an applicable consideration in this case; however, there was testimony relevant to the issue of the children's preferences. Both A.J. and C.J. testified they would like to try living with their father. Both children also stated they had no recollection of living with their father. A.J. indicated she had been vacillating on the issue and C.J. stated she would also like to try an adopted family. The children's opinions are not entirely clear. Our overriding concern, however, is the best interests of the children. *In re L.P.,* 370 N.W.2d 839, 843 (Iowa App. 1985). As has been previously discussed, there is substantial evidence supporting the conclusion the best interests of the children would be served by terminating Francis's parental rights. We conclude the district court did not err in doing so.

■ Virginia argues the district court should have considered the factors set out in Iowa Code section 232.116(3). The relevant portion of section 232.116(3) states:

The court need not terminate the relationship between the parent and child if the court finds any of the following:

. . . .

(b) The child is over ten years of age and objects to the termination.

(c) There is clear and convincing evidence that the termination would be

detrimental to the child at the time due to the closeness of the parent-child relationship.

Iowa Code §§ 232.116(3)(b), (c). The factors in section 232.116(3) have been interpreted as permissive, not mandatory. *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa App.1993); *In re J.V.*, 464 N.W.2d 887, 890 (Iowa App.1990). It is in the court's discretion, based upon the unique circumstances of each case and the best interests of the child, whether to apply the factors in section 232.116(3). *See In re J.V.*, 464 N.W.2d at 890.

While both C.J. and A.J. are over ten years of age, their testimony did not provide a clear objection to termination of parental rights. Neither child appeared to have a well-defined opinion on the issue of termination, much less a clear objection to termination. As neither parent has maintained significant and meaningful contacts with the children, the consideration under section 232.116(3)(c) clearly does not apply to this case. We conclude the district court did not err in its analysis of the termination of Virginia's parental rights.

*VII. Hearsay.* Virginia and Francis both contend the district court erred in admitting the State's Exhibit 1 over their hearsay objections. The exhibit contained reports prepared by the social worker in this case as well as other reports and information relied upon by the social worker in carrying out her duties and in testifying at the termination hearing. Such reports have previously been held to be admissible over hearsay objections. *In re A.M.H.*, 516 N.W.2d 867, 873 (Iowa 1994); *In re K.F.*, 437 N.W.2d 559, 562–63 (Iowa 1989); *In re E.J.R.*, 400 N.W.2d 531, 532 (Iowa 1987); *In re K.M.R.*, 455 N.W.2d 690, 692–93 (Iowa App.1990). We find the district court did not err in admitting Exhibit 1.

Upon consideration of all issues raised on appeal, we affirm the district court's ruling terminating the parental rights of both Virginia and Francis.

**AFFIRMED.**